UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NA'EEM BETZ,<br><br>    Plaintiff,<br><br>v.<br><br>SYNCHRONY BANK,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Civil Case No. 1:22-cv-02235-JEB<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT SYNCHRONY BANK'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

AND NOW, comes Defendant Synchrony Bank ("Synchrony"), by and through its undersigned counsel, and files the within Memorandum in Support of its Motion to Dismiss the Second Amended Complaint of Na'eem Betz ("Plaintiff") and states as follows.

## I.  INTRODUCTION

Plaintiff is a serial litigant attempting to profit off of his failure to satisfy debts that he owes. The instant case is yet another in a long line of cases he has initiated to further this endeavor. As a delinquent Synchrony accountholder, Plaintiff now brings this second amended complaint against Synchrony based on purported violations of the Telephone Consumer Protection Act and alleged invasion of privacy.

To the extent the Complaint is based on the alleged use of an automated telephone dialing system ("ATDS"), the Supreme Court's Ruling in *Facebook v. Duguid* renders Plaintiff's Complaint dead on arrival because the Complaint establishes that any calls to Plaintiff were not random; instead, Synchrony intentionally called Plaintiff because he was delinquent on his account. For this reason, Plaintiff's ATDS claim should be dismissed in its entirety with prejudice. Moreover, to the extent the claims are based on revocation of consent to make calls using a pre-

- 1 -

recorded or automated voice ("PRAV"), the allegations and relevant documents contradict Plaintiff's contention that he actually effectively revoked his consent for Synchrony to contact him on the date(s) alleged. Accordingly, Plaintiff's PRAV-based claim is legally insufficient and should be dismissed in its entirety. Furthermore, because Synchrony's alleged conduct could not be deemed "highly offensive" to a normal person, Plaintiff's claim for invasion of privacy should also be dismissed.

## II. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff is a delinquent Synchrony cardholder with a past due balance of $4,103.49. Second Amended Compl. (ECF No. 16) ("Compl."), Ex. D. According to the Complaint, in February and May 2021, Plaintiff allegedly verbally revoked consent for calls from Synchrony on the same days he received them. Compl. ¶ 11- 12. Specifically, Plaintiff asserts only that he answered a call and said, "Hello, please stop calling I revoke any and all prior express consent" and "You do not have my consent any longer to harass me with prerecorded messages on my cellular telephone." *Id*. at ¶ 12. Plaintiff alleges that he "hung up the cell phone immediately" after making these statements. *Id*. Plaintiff further alleges that he again attempted to revoke consent by filing consumer complaints with the Consumer Financial Protection Bureau ("CFPB") in April and May of 2021. *Id.* at ¶ 13. However, neither of these CFPB complaints actually contained revocation of consent. *See* Exhibits A & B. Plaintiff alleges that despite his attempts to revoke consent, Synchrony continued to call his cell phone using a random or sequential number generator and a pre-recorded or artificial voice. *See generally*, *id*. Based on the foregoing, Plaintiff alleges that Synchrony is liable for violations of 47 U.S.C. §227(b)(1)(A)(iii) and for invasion of privacy. Compl. ¶¶ 42-50, 55.

### III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Notably, "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Georg Fischer Disa, Inc.*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (quotations omitted).

### IV.  ARGUMENT

**A.  Plaintiff's TCPA Claims Fail**

Plaintiff's Complaint contains a purported claim for violation of the TCPA. To state a claim under the TCPA, a plaintiff must allege: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS") or a pre-recorded or artificial voice ("PRAV"); (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1). The TCPA defines an automatic telephone dialing system as equipment that "has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

1. <u>Plaintiff's ATDS-Based Claim Fails In Light of the Supreme Court's Ruling in *Facebook v. Duguid*</u>

Plaintiff makes contradictory allegations that Synchrony both randomly or sequentially generated telephone numbers and made targeted calls to him to collect his debt. Compl., ¶¶ 19, 31. The recent Supreme Court ruling in *Facebook, Inc. v. Duguid* supports dismissal of this count. 141 S. Ct. 1163 (2021). *Facebook* and its progeny hold that a platform which calls phone numbers from an established, non-random database of phone numbers, or specifically targets numbers in that non-random database, does not qualify as an ATDS under the TCPA. *Id*. District courts have relied on *Facebook* to hold that a device which calls a set of phone numbers from an established, non-random database of phone numbers, or specifically targets numbers in that non-random database, does not qualify as an ATDS under the TCPA. *See Pascal v. Concentra, Inc.*, No. 19-cv-02559, 2021 U.S. Dist. LEXIS 239583, 2021 WL 5906055, at *8 (N.D. Cal. Dec. 14, 2021); *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 U.S. Dist. LEXIS 129573, 2021 WL 2936636 (E.D. Mich. July 13, 2021); *Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 U.S. Dist. LEXIS 115053, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021); *Samataro v. Keller Williams Realty*, 1:21-cv-76-RP, 1:20-cv-835-RP, 1:18-cv-775-RP (lead), 2021 U.S. Dist. LEXIS 207058, 2021 WL 4927422, at *4 (W.D. Tex. Sept 27, 2021) (cases cited).

Here, Plaintiff's allegations that Synchrony used an ATDS fail as a matter of law because the Complaint demonstrates that the phone number was not called randomly or via a sequential number generator. Compl. ¶ 31. Instead, the calls were made to a specific number for the specific purpose of speaking with Plaintiff because his account was delinquent. Compl., Ex. D.  It is illogical that Synchrony would dial randomly or use sequentially generated numbers with the hope of reaching one of its customers. For this reason, his TCPA claim with respect to ATDS calls fails, and should be dismissed with prejudice.

2. <u>Plaintiff's Allegations and the Relevant Documents Contradict Plaintiff's Claim that He Revoked Consent</u>

Next, Plaintiff alleges that he attempted to revoke his consent to receive further calls in two manners: on the telephone and through CFPB complaints. However, both his own allegations and the relevant documents demonstrate that no revocation actually occurred on these occasions.

To be actionable under the TCPA, the calls in question must be made without the called party's consent. 47 U.S.C. § 227(b)(1). A called party may revoke consent, but that revocation must be reasonable. *ACA Int'l v. FCC*, 435 U.S. App. D.C. 1, 6, 885 F.3d 687, 692 (2018). The Federal Communications Commission ("FCC") has issued instructive guidance on the issue of reasonableness, stating that "[w]hen assessing whether any particular means of revocation used by a consumer was reasonable," the Court should consider:

> the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance and whether the caller could have implemented mechanisms to effectuate a requested revocation without incurring undue burdens.

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7996 ¶ 64 n.233 (July 10, 2015) (the "2015 Ruling").

Moreover, a revocation is not reasonable to the extent the surrounding facts and circumstances indicate it will not be effective. *Epps v. Earth Fare, Inc.*, No. CV 16-08221 SJO (SSx), 2017 U.S. Dist. LEXIS 63439, at *13-14 (C.D. Cal. Feb. 27, 2017); *Viggiano v. Kohl's Dep't Stores, Inc.*, No. 17-0243-BRM-TJB, 2017 U.S. Dist. LEXIS 193999, at *11-12 (D.N.J. Nov. 27, 2017). The reasonableness of a purported revocation is particularly suspect where there is evidence the consumer's revocation may have been an attempt to manufacture a TCPA lawsuit. *See Epps*, 2017 U.S. Dist. LEXIS 63439, at *14 (acknowledging that plaintiff, whom defendant accused of manufacturing a TCPA claim, had "[w]ithout explanation . . . ignored [d]efendant's

clear instruction to stop the messages [and instead sent] verbose requests to terminate the messages.").

> a. Plaintiff Did Not Effectively Revoke Consent on the Phone

Here, Plaintiff first avers that he answered calls he believes were from Synchrony and said, "Hello, please stop calling I revoke any and all prior express consent . . . You do not have my consent any longer to harass me with prerecorded messages on my cellular phone." Compl., ¶ 12. Plaintiff admits that he "hung up the cell phone immediately" after making these statements. *Id*. Simply put, this was not a reasonable attempt to revoke consent. Plaintiff could not have possibly had a reasonable expectation that he could effectively revoke consent under these circumstances. *2015 Ruling*, 30 FCC Rcd. At 7996 ¶ 64 n.233. For example, Plaintiff does not aver that the caller confirmed or acknowledged the alleged requests. *See generally* Compl. In fact, the Complaint appears to support that the request was not heard given the May 25, 2021 letter which confirms that Synchrony had no record of a purported request for calls to cease. Compl., Ex. D. Assuming *arguendo* that Plaintiff's request was heard by Synchrony, Plaintiff did not stay on the line long enough to confirm his own identity and his authority to revoke consent and/or that the caller heard or understood his request. *Id*. at ¶ 12. Considering the totality of the facts and circumstances here, the allegations as pled do not support that Plaintiff revoked his consent to receive phone calls from Synchrony.

> a. Plaintiff Did Not Effectively Revoke Consent Through His CFPB Compalints

Plaintiff next contends that he "revoked any and all alleged express consent when the consumer complaints were filed online with the [CFPB] on 4/19/2021 [and] 5/21/2021." Compl. ¶ 13.  However, neither of these CFPB complaints actually contained a revocation of consent.

The April 19, 2021 CFPB Complaint, attached hereto as *Exhibit A*, contains a lengthy and somewhat difficult to follow recitation of legal principles, but its main thrust appeared to be a challenge to the underlying debt.[1]  Indeed, therein, Plaintiff wrote that "this Notice shall be deemed a request/demand for "verification" and debt validation."  However, the April 19, 2021 CFPB Complaint did not contain a specific revocation of consent to be contacted by prerecorded or automated voice calls. *See Ex. A.*

Similarly, the May 21, 2021 CFPB Complaint was comprised of another lengthy and scattered recitation of various legal principles, including references to various provisions of the TCPA. *See Ex. B.*  Buried within this veritable wall of text was a claim that "Plaintiff Naeem Betz has revoked in [sic] alleged consent numerous times" at p. 2.  As demonstrated above, this statement is inaccurate.  Moreover, neither this statement nor any other contained in the May 21, 2021 CFPB Complaint actually communicated a "new" revocation of consent.[2]  Even if this statement did expressly state that Plaintiff was revoking consent, the fact that he buried it amidst a mountain of confusing and difficult-to-follow text makes renders it ineffective and unreasonable. *See*, 2017 U.S. Dist. LEXIS 63439, at *13-14; *Viggiano*, 2017 U.S. Dist. LEXIS 193999, at *11-12 (a revocation is not reasonable to the extent the surrounding facts and circumstances indicate it will not be effective).

Based on the foregoing, at all times relevant, Synchrony had Plaintiff's consent to contact him. As all calls were made with Plaintiff's consent, his TCPA claim fails, and should be dismissed with prejudice.

---

[1] Notably, "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Georg Fischer Disa, Inc.*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (quotations omitted).

[2] To the extent the Court determines that the May 21, 2021 CFPB Complaint constituted a revocation of consent, Plaintiff's PRAV-based TCPA claim should be limited to only such calls allegedly made after Synchrony's receipt of that CFPB Complaint.

### B. Plaintiff's Invasion of Privacy Claim Fails Because Synchrony's Alleged Conduct Could Not be Deemed "Highly Offensive" to a Normal Person

In addition to bringing a fatally flawed TCPA claim, Plaintiff also attempts to raise a cause of action for Invasion of Privacy based on the number of calls Synchrony made to Plaintiff. However, as discussed below, this claim fails because Synchrony's alleged conduct could not be deemed "highly offensive" to a normal person.

Invasion of privacy is comprised of four constituent torts, each with distinct elements and each describing a separate interest capable of being invaded: "(1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit." *Wolf v. Regardie*, 553 A.2d 1213, 1216-1217 (D.C. 1989). The first tort, intrusion upon seclusion, has three elements: "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." *Id.* at 1217 (internal citations omitted).

District of Columbia courts have recognized that repeated phone calls may in some limited circumstances constitute an invasion of privacy. *See e.g. Redshift v. Shaw*, 2018 D.C. Super. LEXIS 102. However, this is true only "when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff that becomes a **substantial burden to his existence**." *Id.* (quoting Restatement (Second) of Torts, § 652(B) cmt. d; *see also* id. cmt. b, illus. 5) (emphasis added).

Other courts have determined that call volume alone is insufficient to support an intrusion on seclusion cause of action. *See e.g. Sprogis v. Suntrust Bank*, No. 6:13-cv-365-Orl-37KRS, 2013 U.S. Dist. LEXIS 79713, at *5-6 (M.D. Fla. June 5, 2013) ("the Court cannot say that allegations

of consistent phone calls, without more, are sufficiently outrageous to state an intrusion claim"); *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 434 (D.N.J. 2013) ("a debt collector merely calling persistently does not by itself demonstrate a substantial burden on the recipient"); *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010), aff'd, 627 F.3d 833 (11th Cir. 2010) (dismissing claim of invasion of privacy even when debt collector called Plaintiffs 35-40 times, up to six times per day, over a three month period because "those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion"); *Cunningham v. Professional Educ. Inst., Inc.*, No. 4:17-CV-894, 2018 U.S. Dist. LEXIS 215107, (E.D. Tex. Nov. 5, 2018), adopted by 2018 U.S. Dist. LEXIS 214168 (E.D. Tex. Dec. 20, 2018) (finding allegations of unwanted robocalls and invocation of 'right to be left alone' insufficient for pleading an intrusion on seclusion claim); *Burgess v. Portfolio Recovery Assocs., LLC*, No. CV 16-1463 DSF (FFMx), 2017 U.S. Dist. LEXIS 43536 (C.D. Cal. Mar. 23, 2017) (no triable issue of fact that the defendant's 30 debt collection phone calls over a period of 73 days were not highly offensive to a reasonable person because the 'mere number of phone calls by a debt collector cannot support a claim of intrusion on seclusion' -- instead, the content of the calls must be offensive).  Thus, courts permit invasion of privacy claims based on telephone calls only where the allegations clearly demonstrate highly offensive, rather than merely annoying or upsetting, conduct.

      Here, viewing the allegations in the light most favorable to Plaintiff, the Complaint fails to allege that Synchrony ever engaged in the conduct that would be considered highly offensive to the normal person, or conduct that caused "a substantial burden to [Plaintiff's] existence." *Redshift*, 2018 D.C. Super. LEXIS 102 (quoting Restatement (Second) of Torts, § 652(B) cmt. d). For example, there is no claim that Synchrony called Plaintiff during the middle of the night, or

placed repeated phone calls that would have caused Plaintiff's phone to ring incessantly. *See* Compl. Ex. A (Plaintiff's call logs demonstrating that the calls were made at reasonable times of the day). And although Plaintiff does claim that Synchrony continued to make calls even after Plaintiff asked that they stop, that is the sum total of Plaintiff's claim: that Synchrony made several calls which Plaintiff did not answer. *See* Compl. Ex. A (demonstrating that the calls were largely declined or simply missed altogether). There is no claim or evidence showing that Synchrony did anything to personally attack or insult Plaintiff beyond causing his phone to ring, and Plaintiff does not allege any facts to demonstrate that the contents of the calls were somehow highly offensive. Simply put, there are no allegations whatsoever to support the conclusion that Synchrony engaged in the type of highly offensive conduct required to sustain a cause of action for intrusion upon seclusion. Accordingly, this claim should be dismissed with prejudice.

## V.  CONCLUSION

This case is nothing more than a thinly veiled attempt to not only elude financial responsibility for a debt but also to profit from it, which should not be tolerated by this Court. Synchrony respectfully requests that this Honorable Court grant its Motion and dismiss Plaintiff's Second Amended Complaint in its entirety with prejudice, and grant such other relief to Synchrony as the court deems equitable and just.

Dated: February 21, 2023                       Respectfully submitted,

/s/ *Mark D. Quist*
Mark D. Quist (D.C. Bar No. 1552500)
Reed Smith LLP
1301 K Street NW, Suite 1000
Washington, DC 20005
Phone: (202) 414-9200
Email: mquist@reedsmith.com

David A. Casale (Admitted *Pro Hac Vice*)
Reed Smith LLP
20 Stanwix Street, Suite 1200

Pittsburgh, PA 15222
Phone: 412-288-3330
Email: dcasale@reedsmith.com

*Counsel for Synchrony Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 21, 2023, I have caused to be electronically filed the within and foregoing in the above-styled civil action with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record as follows:

>Na'eem Betz
>Email: nobetzo@gmail.com
>Plaintiff, *Pro Se*

>*/s/ Mark D. Quist*
>Mark D. Quist (D.C. Bar No. 1552500)