UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NA'EEM BETZ,

Plaintiff,

v.                                              Civil Action No. 22-2235 (JEB)

SYNCHRONY BANK,

Defendant.

**MEMORANDUM OPINION**

This Telephone Consumer Protection Act lawsuit is far from Plaintiff Na'eem Betz's first rodeo. A frequent *pro se* filer, he brings this TCPA action against Synchrony Bank for allegedly calling him over 80 times using an autodialer and pre-recorded message. Plaintiff filed this Complaint in July 2022, and he has since amended it twice and withdrawn a third proposed amendment. Synchrony now moves to dismiss the Second Amended Complaint. The Court will grant that Motion in part and deny it in part.

**I.     Background**

Random robocalls are undeniably annoying and, in some cases, against the law. According to his Second Amended Complaint and his attached exhibits, which the Court treats as true for purposes of the Motion to Dismiss, Synchrony repeatedly called Betz using pre-recorded voice messages without his consent.

Betz provides a log of phone calls from Synchrony starting on February 20, 2021. See ECF No. 22-1 (2d Am. Compl.), Exh. A (Phone Log). According to this log, Synchrony called him approximately once a day to collect on his "alleged debt." 2d Am. Compl., ¶ 2; see also Phone Log. These daily calls lasted through May 24 of that year. See Phone Log.

1

When he did not answer these calls, Betz received a voicemail that identified the caller as Synchrony, requested that he return its call, provided contact information, and ended with a statement saying, "This is a recording." 2d Am. Compl., Exh. B (Message Transcript). Betz alleges that he expressly revoked "any and all prior express consent" by telephone on February 26 and 27 and on May 6. See 2d Am. Compl., ¶ 11. On these occasions, he answered the phone saying, "[P]lease stop calling I revoke any and all prior consent," and "[y]ou do not have my consent any longer to harass me with prerecorded messages on my cellular telephone" before immediately hanging up. Id.

Betz explains that he further revoked his consent when he filed two complaints with the Consumer Financial Protection Bureau on April 19 and May 21, 2021. On May 25, Synchrony responded to Betz's CFPB complaints and stated that the company had a policy to "cease and desist collection telephone calls once the accountholder has provided [it] with the cease and desist notification." Id., Exh. D (Response Letter). The response further stated, "On April 22, 2021, in response to your request submitted through [the CFPB complaint,] we coded this account to prevent future telephone calls." Id. Synchrony, however, "[did] not have [a] record of receiving a cease and desist request from you either in writing or over the telephone prior to our receipt" of the CFPB complaints. Id.

In total, Betz received 83 calls from Synchrony — 52 prior to April 22 and 31 after Synchrony "cod[ed]" his account. See 2d Am. Compl., ¶¶ 11, 15. "Upon information and belief," Betz alleges that Synchrony made these calls using a dialing system that had "the capacity to store or call phone numbers using a random or sequential number generator." Id., ¶ 18.

The case has had quite a drawn-out procedural history. Betz filed his Complaint on July 27, 2022. Synchrony then moved to dismiss the Complaint on September 15. See ECF No. 8 (MTD). Rather than respond to Synchrony's Motion to Dismiss, Betz sought to amend his Complaint in November. See ECF No. 15 (Mot. to Am. Compl.). The Court granted this Motion on December 2. See Minute Order of Dec. 2, 2022. Synchrony then moved to dismiss Betz's Amended Complaint. See ECF No. 18 (MTD Am. Compl.). Again, Betz chose not to respond to this Motion and, instead, sought to file another Amended Complaint in February 2023. See ECF No. 22 (Consent Filing of 2d Am. Compl.). The Court granted this Motion soon after. See Minute Order on Feb. 6, 2023.

The cycle continued. Synchrony moved to dismiss the Second Amended Complaint. See ECF No. 23 (MTD 2d Am. Compl.). After requesting multiple extensions of time to respond to that latest Motion to Dismiss, see ECF Nos. 25, 28 (Mots. Ex. Time), Betz filed a Motion for Leave to File a Third Amended Complaint. See ECF No. 29 (Mot. to Amend); ECF No. 29-1 (3d Am. Compl.). Only within the last month did he finally respond to Synchrony's Motion to Dismiss. See ECF No. 33 (MTD Opp.). Betz later withdrew his Motion for Leave to File a Third Amended Complaint. See ECF No. 35 (Notice of Withdrawal). The remaining Motion — the Motion to Dismiss the Second Amended Complaint — is now ripe.

**II.     Legal Standard**

Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6). This Rule permits a court to dismiss any count of a complaint that fails "to state a claim upon which relief can be granted." In evaluating the motion, the court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)

(quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006).

This pleading standard is "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), as a count will survive so long as there is a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Dura Pharm., 544 U.S. at 347).  While "detailed factual allegations" are not necessary to withstand a dismissal motion, id. at 555, the complaint still "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

In other words, a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A complaint may survive even if "recovery is very remote and unlikely" or the veracity of the claims are "doubtful in fact" if the factual matter alleged in the complaint is "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56.

In evaluating the sufficiency of a plaintiff's complaint under Rule 12(b)(6), the court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  With pro se litigants, the court must consider a complaint "in light of" all filings, including those

4

responsive to a motion to dismiss. Brown v. Whole Foods Market, 789 F.3d 146, 152 (D.C. Cir. 2015).

**III.    Analysis**

The Second Amended Complaint contains two counts: violation of the TCPA and invasion of privacy. The Court analyzes each separately.

      1. *татьTCPA*

To make out a TCPA claim, a plaintiff must allege that: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system (ATDS) or a pre-recorded or artificial voice (PRAV); (3) without the recipient's prior express consent. See 47 U.S.C. § 227(b)(1)(B). An ATDS is defined by the TCPA as equipment that "has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

In his Second Amended Complaint, Betz alleges that Synchrony repeatedly called his cell phone using an ATDS or PRAV without his consent. See 2d Am. Compl., ¶¶ 43–48. He further explains that he made his lack of consent known numerous times, both verbally when he answered calls and in writing when he filed a complaint with the CFPB. Id., ¶¶ 11, 13. Although Betz apparently has withdrawn his contention that Synchrony used an ATDS, see MTD Opp. at 6, the Court will discuss both ATDS and PRAV in turn.

Where the called party is the intended recipient of a message, an ATDS theory normally will not apply. An automatic telephone dialing system uses a random or sequential number generator, and a caller would not use such technology to contact a specific person without a showing to the contrary. See ACA Int'l v. FCC, 885 F.3d 687, 694 (D.C. Cir. 2018). Betz does not disagree that Synchrony intentionally called him — albeit with the use of an automated

system — to collect on a debt. See Response Letter. Other than mentioning that this debt is "alleged," Betz does nothing to refute the targeted nature of the calls. See 2d Am. Compl., ¶¶ 2–3, 13, 15, 31; Response Letter (stating the exact debt Betz owes); see also Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1168, 1170 (2021) (ruling for Defendant in TCPA case and highlighting targeted nature of communications). Betz, consequently, has not sufficiently pled that Synchrony used an ATDS in calling him.

As a result, Plaintiff's claim may proceed only if Synchrony used a PRAV without his prior express consent. There is little dispute that Defendant used a pre-recorded or artificial voice during these calls. Each voicemail he received contained the exact same message, which ended by saying, "This is a recording." The sole question is thus whether Synchrony had Betz's prior express consent to receive PRAV calls.

It is true that Plaintiff offers nothing within the Second Amended Complaint to show the absence of express consent. Yet, "the burden is on the caller to prove that it obtained the necessary prior express consent." In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 ("2015 Decision"), 30 FCC Rcd. 7961, 7990, ¶ 47 (2015) (emphasis added), set aside on other grounds by ACA Int'l, 885 F.3d at 692; see also In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 565, ¶ 10 (2008). At the motion-to-dismiss stage, such consent would have to appear in the Complaint or be contained in one of the documents attached thereto. That is not the case.

In seeking dismissal, Synchrony instead relies on one purported admission to show that Betz previously consented to the calls. See ECF No. 34 (Reply to MTD Opp.) at 2–3; 2d Am. Compl., ¶ 49 ("Plaintiff revoked any prior express consent before the additional ('31') telephone calls with artificial prerecorded messages placed by the Defendant."). Yet, this assumes too

much.  First, it overlooks the times Betz states he <u>never</u> consented.  Id., ¶ 15 (stating Synchrony called him "without prior express written consent"); id., ¶ 47 (similar).  Further, in this "concession," Betz does not necessarily admit prior consent but rather underscores his continued desire to stop receiving calls.  The Court, therefore, cannot infer that he previously agreed to receive these calls.  See 2015 Decision, 30 FCC Rcd. at 7990, ¶ 47; see also 47 C.F.R. § 64.1200(f)(9) (defining prior express consent to require written agreement meeting certain requirements).

The Court, accordingly, will grant Synchrony's Motion to Dismiss this count only in part, allowing Betz to proceed with his TCPA claim as it relates to Synchrony's use of a PRAV.

2. *Invasion of Privacy*

Betz's second count alleges common-law invasion of privacy.  See 2d Am. Compl., ¶¶ 54–62.  Invasion of privacy is not seen as one tort, "but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded.  The four constituent torts are (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit."  Wolf v. Regardie, 553 A.2d 1213, 1216–17 (D.C. 1989).  Betz's claim relates to the first, intrusion upon one's solitude or seclusion.  That tort has three elements: "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person."  Id. at 1217 (internal citations omitted).  Defendant does not challenge the first two elements but instead maintains that its calls were not highly offensive.

District of Columbia courts have found calls to constitute an invasion of privacy only "when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff that becomes a substantial burden to his existence." Redshift v. Shaw, No. 2017 CA 2722, 2018 WL 11397927, at *5 (D.C. Super. Jan. 31, 2018) (quoting Restatement (Second) of Torts, § 652(B) cmt. d).  The Second Amended Complaint offers nothing to support the claim that an ordinary, reasonable person would find Synchrony's calls highly offensive to the extent that they became a substantial burden to his existence.

Synchrony normally called Betz once a day to collect on an alleged debt; what is more, Betz declined to answer most of the calls.  See Phone Log.   Even when he did answer, he would promptly hang up.  See 2d Am. Compl., ¶ 12.  These calls included no threats or personal attacks, and at no point does Betz allege that Synchrony called him to the point of "hounding." Cf. Redshift, 2018 WL 11397927, at *5 (noting that harassing and bullying calls and texts would come in at all hours of day and night).  Defendant called during normal working hours and simply asked Betz to return the call.  See Phone Log; see also Message Transcript.

Although Betz may allege in conclusory fashion that these calls caused "emotional harm and distress, embarrassment, humiliation, and other losses," 2d Am. Compl., ¶ 59, he provides little detail as to these allegations.  The most Betz explains in this regard is that he experienced "annoyance, waste of time, the use of the telephone power and network bandwidth, and the intrusion on his telephone that occupied it from receiving legitimate communications." Id., ¶ 35. These are not enough.

Again, Betz may not like these phone calls, but they do not amount to an invasion of privacy.  The Court will dismiss this count.

8

## IV.     Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss the Second Amended Complaint in part and deny it in part. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  May 8, 2023